**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NORTH CAROLINA**

**WESTERN DIVISION**

**CIVIL ACTION NO.:** 5:26-cv-919

CHENDRA R. ROBINSON,
*Plaintiff*,

v.

BIOVENTUS LLC,
*Defendant*.

# COMPLAINT

Plaintiff Chendra R. Robinson, complaining of Defendant Bioventus LLC, alleges and says:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Chendra R. Robinson is an individual residing at 2535 Laurel Valley Way, Raleigh, NC 27604.

2. Plaintiff was employed by Defendant from May 10, 2021, through October 25, 2025.

3. Defendant Bioventus LLC is an employer within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA") and employed Plaintiff during the events described in this Complaint.

4. Defendant maintains its corporate headquarters at 4721 Emperor Boulevard, Suite 100, Durham, NC 27703.

5. At all relevant times, Defendant employed Plaintiff as an Internal IT Auditor, and Plaintiff reported to Kellie Hardee, Senior Manager, Internal Audit and SOX IT.

6. This Court has subject-matter jurisdiction because this action arises under federal law, including the ADEA. Federal district courts have original jurisdiction over civil actions arising under the laws of the United States.

7. This Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters in Durham, North Carolina, conducts business in North Carolina, and employed Plaintiff in North Carolina.

8. Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Defendant's employment decisions, Plaintiff's work for Defendant, and Plaintiff's separation from employment. A civil action may be brought in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

9. Venue is proper in the Western Division because Plaintiff resided and worked in Raleigh, North Carolina, and Defendant maintained its corporate headquarters in Durham, North Carolina, during the relevant period.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant, Charge No. 433-2026-00802, on or about December 3, 2025.

11. Plaintiff's EEOC Charge identified age discrimination, retaliation, discriminatory

performance treatment, loss of responsibilities, a coerced resignation process, and Defendant's selection of younger employees for work and employment opportunities.

12. Plaintiff received the EEOC Notice of Right to Sue on August 20, 2026.

13. This action is timely filed within ninety days after Plaintiff's receipt of the EEOC Notice of Right to Sue.

## FACTUAL ALLEGATIONS

14. Plaintiff began working for Defendant as a contract Accounts Receivable Specialist in January 2021 and became a full-time Accounts Receivable Specialist on May 10, 2021.

15. In 2022, Defendant promoted Plaintiff to Senior Accounts Receivable Specialist.

16. Defendant selected Plaintiff for an Internal IT Auditor position on September 1, 2022, under the supervision of Kellie Hardee.

17. Plaintiff's work as an Internal IT Auditor included supporting IT Internal Audit and Sarbanes-Oxley compliance, evaluating internal controls, identifying risks, performing audit test steps, preparing workpapers, and communicating audit results to management.

18. Plaintiff was at least forty years old throughout the events at issue and was fifty years old during the July 2025 separation discussions.

19. Plaintiff's performance history before 2024 was positive. Defendant's 2022 and 2023 performance evaluations recognized Plaintiff's work, contributions, professional conduct, and potential for greater responsibility.

20. In Plaintiff's 2023 review, Ms. Hardee wrote that Plaintiff exceeded the

expectations of an IT Auditor, possessed leadership qualities, and was ready to take on additional projects.

21. Beginning in or around March 2024, Plaintiff experienced a substantial change in the support, access, information, assignments, and work opportunities that Defendant provided to her.

22. Ms. Hardee ceased including Plaintiff in audit meetings that Plaintiff needed to complete her assigned work and did not provide Plaintiff sufficient direction for assigned audit tasks.

23. Defendant removed Plaintiff's access to JIRA and Workday, platforms Plaintiff had previously used to obtain data necessary to test controls and perform her audit responsibilities.

24. When Plaintiff raised her lost access with Ms. Hardee, Ms. Hardee told Plaintiff that Plaintiff needed to "figure it out."

25. Plaintiff was excluded from regular one-on-one meetings with Ms. Hardee for approximately six months, from March 2024 through August 2024, despite the importance of those meetings to Plaintiff's audit assignments, quarterly testing, internal projects, control reviews, and external-auditor work.

26. Plaintiff performed and led significant work during 2024. For example, Plaintiff led the SOC 1 initiative, scheduled meetings with control owners, created a tracking system, coordinated work with an intern, uploaded reports for external auditors, and completed the project before the April 2024 deadline.

27. During the same period, Plaintiff trained and assisted Makaela McCain, a substantially younger intern who reported to Ms. Hardee.

28. After Plaintiff trained Ms. McCain, Ms. Hardee removed work duties previously performed by Plaintiff and assigned those duties to Ms. McCain.

29. Ms. Hardee repeatedly changed the objectives, expected conclusions, and deadlines for Plaintiff's assignments and then criticized Plaintiff's work as incorrect or late.

30. In August 2024, Plaintiff met with Jessica Gidney, Senior Director of Internal Audit, and reported that Plaintiff had been excluded from meetings, deprived of direction and work responsibilities, and denied regular one-on-one meetings with Ms. Hardee.

31. Plaintiff's treatment by Ms. Hardee worsened after Plaintiff reported these concerns to Ms. Gidney.

32. On March 6, 2025, Ms. Hardee issued Plaintiff a negative 2024 performance review rating Plaintiff as "Inconsistently Meets Expectations."

33. The negative review criticized Plaintiff's collaboration, continuous improvement, workload management, and technical skills, notwithstanding Plaintiff's prior positive reviews and her ongoing completion of audit work.

34. Plaintiff disputed the accuracy and fairness of the negative performance criticisms because Ms. Hardee had excluded her from work-related communications and meetings, removed her access to necessary systems, changed directions, and failed to provide regular performance guidance.

35. In February 2025, Ms. Hardee stated that Plaintiff had improved in all areas, was leading meetings, interacting with control owners and performers, asking appropriate questions, and requesting the correct information.

36. Plaintiff continued to perform significant work in 2025, including participation in an inventory initiative, a value-stream mapping project, and audit work involving named-officer expense reports.

37. On or about July 22, 2025, Defendant issued Plaintiff a Letter of Concern ("LOC"), which Defendant characterized as a thirty-day formal performance process.

38. The LOC accused Plaintiff of declining work quality, incomplete documentation, missed deadlines, inadequate responsiveness to feedback, and other performance concerns.

39. Ms. Hardee presented Plaintiff with a choice between accepting the LOC, which Plaintiff understood would lead to a performance improvement plan and termination, or submitting a delayed resignation while searching for other work.

40. Plaintiff selected the delayed-resignation option to retain income and benefits while seeking other employment, rather than subject herself to the disciplinary process that Defendant presented as the alternative.

41. Plaintiff informed Ms. Hardee by email on July 24, 2025, that she declined the LOC and would remain employed for an additional ninety days while seeking internal and external employment opportunities.

42. Following Plaintiff's decision, Ms. Hardee continued sending Plaintiff DocuSign notifications to sign the LOC, including notifications sent during nonbusiness hours, after Plaintiff had already selected the delayed-resignation option.

43. Plaintiff's employment ended on October 25, 2025. Plaintiff returned her work laptop to Defendant on or about October 24, 2025.

44. Before her employment ended, Plaintiff applied for a Customer Service Supervisor position with Defendant.

45. Plaintiff had prior customer-relations, billing, dispute-resolution, and customer-service experience, including experience as a Senior Customer Relations Manager.

46. Defendant did not select Plaintiff for the Customer Service Supervisor position.

47. Defendant selected a younger male employee for the Customer Service Supervisor position. Plaintiff was informed that an offer was made to that younger employee on or about September 8, 2025.

48. Plaintiff also applied for an IT Project Manager position while still employed by Defendant during the ninety-day transition period.

49. Defendant denied Plaintiff access to apply for the IT Project Manager position on or about September 16, 2025.

50. Defendant's position statement identifies Ms. McCain as an intern in her twenties, identifies the Customer Service Supervisor selectee as a man in his thirties, and confirms that Plaintiff was fifty-one when her employment ended.

51. Defendant's actions deprived Plaintiff of meaningful job responsibilities, access to tools and information needed to perform her job, internal advancement opportunities, compensation, benefits, and continued employment.

52. As a direct result of Defendant's conduct and Plaintiff's loss of employment, Plaintiff suffered lost wages, lost benefits, debt, financial hardship, emotional distress, anxiety, panic attacks, sleep loss, and difficulty obtaining needed medical care and medication.

## COUNT I — AGE DISCRIMINATION IN TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT IN VIOLATION OF THE ADEA

53. Plaintiff incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiff was at least forty years old during all relevant times and therefore was protected by the ADEA. The ADEA protects individuals who are at least forty years of age.

55. The ADEA prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of age.

56. Plaintiff was qualified for her Internal IT Auditor position, as shown by her prior positive performance reviews, completed audit work, successful SOC 1 initiative, and documented contributions to Defendant's IT Audit function.

57. Defendant subjected Plaintiff to materially adverse employment actions by excluding her from meetings, removing access to essential work platforms, withholding managerial support and direction, taking away work responsibilities, assigning work to a substantially younger employee, issuing a negative performance evaluation, and placing Plaintiff in a coercive disciplinary process.

58. Defendant treated Plaintiff less favorably than substantially younger employees, including Ms. McCain, by providing the younger employee with responsibilities previously performed by Plaintiff after Plaintiff trained her.

59. Plaintiff's age was a determinative factor in Defendant's discriminatory treatment of Plaintiff.

60. Defendant’s conduct adversely affected the terms, conditions, privileges, and opportunities of Plaintiff’s employment.

**COUNT II — AGE DISCRIMINATION RESULTING IN CONSTRUCTIVE DISCHARGE IN VIOLATION OF THE ADEA**

61. Plaintiff incorporates by reference Paragraphs 1 through 60 as if fully set forth herein.

62. Defendant’s discriminatory treatment of Plaintiff included removal of meaningful responsibilities, exclusion from meetings and information necessary to perform her job, removal of essential system access, loss of managerial support, negative performance treatment, and transfer of Plaintiff’s work to a substantially younger employee.

63. Defendant then required Plaintiff to choose between a formal disciplinary process that Plaintiff understood would result in termination and a delayed resignation.

64. Defendant’s conduct made Plaintiff’s working conditions objectively intolerable and compelled Plaintiff to resign rather than proceed through the disciplinary path imposed by Defendant.

65. Plaintiff’s delayed resignation was not a voluntary relinquishment of her employment; it was the result of Defendant’s discriminatory actions and the coercive choice Defendant presented.

66. The ADEA prohibits an employer from discharging an employee or otherwise discriminating against an employee with respect to the terms, conditions, or privileges of employment because of age.

67. Plaintiff’s age was a determinative factor in Defendant’s conduct that resulted in

Plaintiff's constructive discharge.

**<u>COUNT III — DISCRIMINATORY FAILURE TO PROMOTE OR SELECT FOR THE CUSTOMER SERVICE SUPERVISOR POSITION IN VIOLATION OF THE ADEA</u>**

68. Plaintiff incorporates by reference Paragraphs 1 through 67 as if fully set forth herein.

69. Plaintiff applied for the Customer Service Supervisor position while she remained employed by Defendant.

70. Plaintiff possessed customer-relations and customer-service experience relevant to that position.

71. Defendant rejected Plaintiff and selected a substantially younger male employee for the Customer Service Supervisor position.

72. Defendant's stated explanation that Plaintiff lacked qualifications is contradicted by the alternative experience criteria described in the position materials and Plaintiff's documented customer-relations and customer-service experience.

73. Defendant's failure to select Plaintiff denied her an internal employment opportunity while she was attempting to preserve her employment with Defendant.

74. The ADEA prohibits an employer from failing or refusing to hire an individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of age.

75. Plaintiff's age was a determinative factor in Defendant's failure to select her for the Customer Service Supervisor position.

## COUNT IV — RETALIATION IN VIOLATION OF THE ADEA

76. Plaintiff incorporates by reference Paragraphs 1 through 75 as if fully set forth herein.

77. Plaintiff engaged in protected activity when she complained to Ms. Gidney in or around August 2024 about Ms. Hardee's discriminatory treatment, exclusion from work meetings, removal of job responsibilities, absence of regular supervisory meetings, and lack of support.

78. Plaintiff further opposed Defendant's discriminatory treatment by reporting the adverse changes to her work conditions and by disputing the inaccurate and unfair performance criticisms used against her.

79. Defendant knew of Plaintiff's protected activity because Plaintiff communicated her concerns directly to Ms. Gidney, Defendant's Senior Director of Internal Audit.

80. After Plaintiff reported her concerns, Defendant intensified the adverse treatment of Plaintiff, including the negative performance evaluation, LOC, coercive resignation process, continued requests that Plaintiff sign the LOC, denial of internal employment opportunities, and separation from employment.

81. Defendant's actions would deter a reasonable employee from reporting discrimination or opposing discriminatory employment practices.

82. The ADEA prohibits discrimination against an employee because the employee opposed a practice made unlawful by the ADEA.

83. Plaintiff's protected activity was a determinative factor in Defendant's retaliatory conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award the following relief:

A. A declaration that Defendant violated the ADEA;

B. Back pay, including lost wages, lost bonuses, lost benefits, and other employment compensation;

C. Front pay in lieu of reinstatement, or reinstatement to an equivalent position if appropriate;

D. Liquidated damages for Defendant's willful violations of the ADEA;

E. Prejudgment and post-judgment interest as allowed by law;

F. Reasonable attorney's fees and costs of this action;

G. An order requiring Defendant to remove, correct, or withdraw discriminatory and retaliatory performance and separation records maintained in Plaintiff's personnel file;

H. Such legal and equitable relief as the Court deems just and proper.

Respectfully submitted, this the 17th day of November, 2026.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

*/s/Amina M. Mack, Esq.*

Amina M. Mack (NCSB No. 61390)
**THE MACK LAW FIRM, PLLC**
4242 Six Forks Road, Ste. 1550
Raleigh, NC 27609
Tel: (984)-480-7147
legal@themacklaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned attorney for Plaintiff Chendra R. Robinson, hereby certifies that a copy of the foregoing Complaint was served on the Defendant via certified mail, to the addresses listed below:

**BIOVENTUS LLC**

4721 Emperor Boulevard, Suite 100, Durham, NC 27703.

This the 17th day of November, 2026.

/s/ Amina M. Mack

Amina M. Mack, Esq.
NCSB: 61390
The Mack Law Firm, PLLC
4242 Six Forks Rd, Ste. 1550
Raleigh, NC 27609
984-480-7147
legal@themacklaw.com

Attorney for Plaintiff